**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| ) | |
| v.  ) | **Case No. 1:13mj182** |
| ) | **Hon. Ivan D. Davis** |
| **ERIC HARROUN,** ) | |
| ) | |
| **Defendant.**  ) | |
| ) | |

## MOTION TO RECONSIDER DETENTION ORDER

COMES NOW the defendant, Eric Harroun, by counsel, pursuant to Federal Rule of Criminal Procedure 46(a) and 18 U.S.C. § 3142(f)(2), and files this Motion to Reconsider the Order of Detention in this case. The premise of the government's request for detention in this case was that Mr. Harroun knowingly and willingly fought alongside the designated terrorist group Jabhat al Nusra. That premise is incorrect. For this reason we respectfully request that the Court reconsider its Order of detention.

### Background

On March 28, 2013, the government filed a complaint and affidavit alleging that Mr. Harroun violated 18 U.S.C. § 2332a(b) in that he conspired to use a destructive device, a rocket propelled grenade, while fighting on behalf of Syrian opposition forces in the ongoing Syrian armed conflict. According to the affidavit, Mr. Harroun stated that he fought with members of Jabhat al Nusra.

On April 8, 2013, the Court conducted a preliminary hearing and a detention hearing. At least twelve times during the hearing, the government repeated that Mr. Harroun was a danger to the community because he knowingly and willfully affiliated himself with a designated terrorist group,

Jabhat al Nusra, while he was in Syria. The Court granted the government's request for detention on that date.

## Argument

Eric Harroun entered Syria in early January 2013 with the intention of joining the Free Syrian Army. He broke no law of the United States in doing so. Indeed, American criminal law has never prohibited citizens from "leav[ing] the country with [the] intent to enlist in foreign military service." *Wiborg v. United States*, 163 U.S. 632, 653-54 (1896). In particular, the criminal prohibition on the organization of private military expeditions from the United States does not prohibit individuals "singly or in unarmed associations, from leaving the United States for the purpose of joining in any military operations which are being carried on between other countries, or between different parties in the same country." *United States v. Pena*, 69 F. 983, 984 85 (D. Del. 1895)

Nonetheless, the government claimed in its Affidavit in Support of Criminal Complaint that Mr. Harroun broke the law by fighting with Jabhat al Nusra, a designated terrorist group, and by conspiring to use rocket propelled grenades in support of the Syrian opposition without lawful authority. The government is wrong.

Section 3142(f)(2) of Title 18 provides that a detention hearing "may be reopened, . . . at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." Because all objective evidence supports a finding that Mr. Harroun did not fight with a designated terrorist organization, the Court should order Mr. Harroun's release from custody.

### I. Harroun Did Not Fight with Jabhat al Nusra

Eric Harroun was honorably discharged from the U.S. Army in 2003 following an auto accident in which he sustained a traumatic brain injury as a passenger in a vehicle. He receives 100 percent disability from the U.S. military. He continues to suffer from headaches and both short term and long term memory loss as a result of his brain injury.

He speaks only a few words of Arabic, and has no particular familiarity with the various opposition groups in Syria, although he did conduct internet searches to identify and avoid falling into the hands of Jabhat al Nusra before he entered Syria in January 2013.

According to the Affidavit, Harroun entered Syria in January 2013 and joined a military group associated with the Free Syrian Army near A'zaz in the northern region of Syria. He joined a branch of the Amr bin al-Aas brigade, a force that has always been affiliated with the Free Syrian Army. *See* Declaration of Elizabeth O'Bagy ¶ 4 (attached as Exhibit 1). The Amr bin al-Aas brigade "does not work with Jabhat al Nusra and does not conduct operations with Jabhat al Nusra." *Id.*

The Affidavit goes on to say that Mr. Harroun engaged in a battle along with "al-Nusra fighters" who were in vehicles "bearing black flags," and that he was transported to an "al-Nusra Front camp." Aff. ¶ 17. According to the Affidavit, Mr. Harroun also identified individuals in a video entitled, "American Fighter Vows Death to Assad" as members of Jabhat al Nusra, and provided names of individuals in the video. *Id.* ¶ 23. Harroun's statements are contradicted by all other available evidence.

First, Jabhat al Nusra would not allow an American who had not been extensively vetted to fight with its members. Declaration of Radwan Ziadeh ¶ 4 (attached as Exhibit 2); O'Bagy Decl. ¶ 3. Indeed, Jabhat al Nusra has strict membership and training requirements that do not permit

3

individuals to join the organization simply by showing up in a camp after a firefight. Nor does Jabhat al Nusra issue videos on any forum other than through its media arm, Al-Manara al-Bayda. O'Bagy Decl. ¶ 3; Ziadeh Decl. ¶¶ 4, 6-7.

Second, many fighters in Syria, including those associated with the Free Syrian Army, use a black flag. See O'Bagy Decl. ¶ 8. The use of a black flag therefore is not an indication that Harroun was with Jabhat al Nusra. Third, a video that was taken by Mr. Harroun after he began fighting with what he thought were "al-Nusra" fighters shows that he was in a jeep that had an FSA insignia on the windshield. *See* Exhibit 3 (screen shot of video taken from http://www.youtube.com/watch?v=f7cSPkgX9Y4).

Fourth, a video that the government stated at the detention hearing that it "just uncovered . . . of the defendant engaged in some type of press conference, with what appears to be a designated terrorist group" actually reveals that Mr. Harroun was with a group that not only works with the Free Syrian Army but also has never claimed any association with Jabhat al Nusra. See Exhibit 4 (translation); Exhibit 4A (copy of video filed by hand). The video makes clear that the group is not Jabhat al Nusra, but instead announces the formation a military force called the al Nasser (Victory) brigade, which is affiliated with the al Aqsa Islamic brigades near Raqqa in the northern area of Syria. See Exhibit 4 (translation). The video is consistent in style with groups that are affiliated with the Free Syrian Army, and is inconsistent with the conclusion that the group is part of Jabhat al Nusra. Ziadeh Decl. ¶ 7; O'Bagy Decl. ¶ 3.

Individuals in the video referenced in paragraph 23 of the Affidavit (in which Harroun threatens Bashar al Assad) are visible in the "press conference" video attached as Exhibit 4A. Furthermore, this video was actually sent by Mr. Harroun to an FBI agent on March 21, 2013, one

week before Mr. Harroun's arrest — it was not simply "uncovered" through a search of Mr. Harroun's electronic media. See Exhibit 5 (screenshot of Harroun's sent email entitled "al Nusra Video").

A facebook site that purports to be associated with the al Aqsa Islamic brigades actually posted the video of Mr. Harroun referenced in paragraph 23 of the Affidavit on January 14, 2013. The facebook site provides reports on groups that are all affiliated with the Free Syrian Army. O'Bagy Decl. ¶ 5. Moreover, the fact that a video of Harroun was posted on a facebook site other than that used by Jabhat al Nusra is inconsistent with the conclusion that the video depicts members of Jabhat al Nusra. See Ziadeh Decl. ¶ 7; O'Bagy Decl. ¶ 3.

There are three militant opposition forces in Syria that call themselves the al Aqsa Islamic brigades, and they are all entirely unrelated to each other. Importantly, the al Aqsa Islamic brigade in the northern area of Syria, which is where Harroun spent his time in January and February, works with FSA units and has no association with Jabhat al Nusra. See O'Bagy Declaration ¶ 6. Accordingly, the group that Mr. Harroun was with in January and February 2013 does not purport to be Jabhat al Nusra, and has none of the indicia of Jabhat al Nusra. See Ziadeh Declaration ¶¶ 6-7.

In sum, notwithstanding Mr. Harroun's assertions to the contrary, it is apparent that he did not fight with Jabhat al Nusra in Syria.

## II. The Court Must Consider All Reasonable Less Restrictive Alternatives To Detention

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Accordingly, the Bail Reform Act of 1984 provides that a defendant must be released on her personal recognizance or an

unsecured personal bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b); *accord United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

Under circumstances in which a personal recognizance bond is insufficient, the officer must choose "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." § 3142(c)(1)(B). *see, e.g.*, *United States v. Infelise*, 934 F.2d 103, 105 (7th Cir. 1991) (holding that under § 3142(e) defendants on racketeering charges were entitled to further consideration of electronic ankle bracelets, rather than continued detention, as a lesser restrictive condition) (Posner, J.). In other words, the Court must consider all reasonable less restrictive alternatives to detention. *See* § 3142(e). Moreover, conditions set upon release are intended to be preventative and not punitive in nature. *United States v. Salerno*, 481 U.S. 739, 747 (1987) (evaluating the legislative history of § 3142). In sum, the Bail Reform Act does not modify or limit the presumption of innocence. *See* 18 U.S.C. § 3142(j).

In this case the Pretrial Services Office identified conditions of release sufficient to satisfy the conditions of § 3142. The Court declined to accept those conditions at the detention hearing because of the nature of the government's charge and the presumption against release. That presumption has been rebutted. This Court therefore should not allow the government's inflated claim that Mr. Harroun fought with "al Qaida" to outweigh the compelling evidence that Mr. Harroun fought, for a very short time, with forces that have always been supported and are now militarily supplied by the United States.

In sum, the government made a mistake in deciding to arrest and charge Mr. Harroun before it could corroborate his statements that he fought with Jabhat al Nusra. The Court should help to correct that error now by finding that conditions exist that will reasonably assure the safety of the community and the appearance of Mr. Harroun as required.

WHEREFORE, Mr. Harroun respectfully requests that this court set this matter for a hearing as soon as practicable to reconsider its bond determination in this matter, and set appropriate conditions of release.

        Respectfully submitted,
        ERIC HARROUN

        By Counsel,

        Michael S. Nachmanoff,
        Federal Public Defender

        By:     /s/
        Geremy C. Kamens
        Virginia Bar No. 41596
        First Assistant Federal Public Defender
        Attorney for Mr. Harroun
        1650 King Street, Suite 500
        Alexandria, Virginia   22314
        (703) 600-0848 (telephone)
        (703) 600-0880 (facsimile)
        Geremy_Kamens@fd.org (email)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of June 2013, I will electronically file the foregoing with the Clerk of court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Carter Burwell, Esquire
>United States Attorney's Office
>2100 Jamieson Avenue
>Alexandria, VA  22314

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the forgoing pleading will be delivered to Chambers within one business day of the electronic filing.

>/s/
>Geremy C. Kamens
>Virginia Bar No. 41596
>First Assistant Federal Public Defender
>Attorney for Eric Harroun
>1650 King Street, Suite 500
>Alexandria, Virginia  22314
>(703) 600-0848 (telephone)
>(703) 600-0880 (facsimile)
>Geremy_Kamens@fd.org (email)